UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

BELIJAR LTD., a Turks and
Caicos company,

    Plaintiff,

v.

ABY GALSKY SANDELMAN,
an individual,

    Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, BELIJAR LTD. ("Belijar"), by and through its counsel, sues Defendant, ABY GALSKY SANDELMAN ("Defendant"), for declaratory relief as to the ownership of Belijar and the ability to sell a property in Miami-Dade County, Florida, and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Belijar Ltd., is a foreign company incorporated in the Turks and Caicos Islands ("TCI") under the laws of TCI.

2. Belijar currently has only two Directors: Bela Sandelman de Galsky ("Bela") and Jessica Galsky Sandelman de Wolfenson ("Jessica"), who is Bela's daughter. Bela is also the Chairman of Belijar's Board of Directors.

3. Both Bela and Jessica are residents of Peru.

4. Defendant, Aby Galsky Sandelman, is *sui juris*, over the age of 18, and a resident of Miami-Dade County, Florida.

5. Defendant holds no role or position in Belijar.

6. Defendant does not have any current ownership in Belijar.

7. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the value of the real property in controversy is more than $75,000.

9. This Court has personal jurisdiction over Defendant because Defendant resides in Florida.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because: (i) Defendant resides in Miami-Dade County, Florida; and (ii) the real property that is the subject of this action is located in Miami-Dade County, Florida.

11. All conditions precedent to the commencement of this action have occurred, have been performed, or have been waived.

12. Belijar has hired the law firm of Holland & Knight LLP to represent it in this action and has agreed to pay a reasonable fee for such services.

## GENERAL ALLEGATIONS

13. On or about March 20, 1990, Peruvian nationals Isaac Galsky ("Isaac") and Bela, husband and wife, formed Belijar in TCI. A true and correct copy of Belijar's Memorandum and Articles of Association ("Belijar's Articles of Association") is attached hereto as **Exhibit A**.

14. Isaac and Bela formed Belijar to mainly hold personal real estate for Isaac and Bela, including a vacation home located at 18911 Collins Avenue, Unit 2401, Sunny Isles Beach,

Florida (the "Florida Vacation Home"), which Belijar, through Isaac and Bela, purchased on or about February 1, 2007 for $2,680,000.

15. Belijar currently owns the Florida Vacation Home.

*The Turks & Caicos Islands Abolish Bearer Shares*

16. At the time Isaac and Bela formed Belijar in 1990, Belijar issued 5,000 shares distributed fifty-fifty (50% by 50%) between Isaac and Bela as evidenced through two separate "Bearer Shares" certificates (the "Belijar Bearer Shares"). True and correct copies of the Belijar Bearer Shares certificates are attached hereto as **Composite Exhibit B**.

17. Bearer shares gave the holder of the certificate(s) ownership of the TCI company by virtue of simply physically holding the bearer shares. Issuing bearer shares as evidence of ownership was common practice in 1990 in TCI.

18. However, on January 1, 2014, TCI enacted Ordinance 17 of 2013 (the "2013 Ordinance") to abolish bearer shares, making all bearer shares null and void and without effect for all purposes under TCI law. A true and correct copy of the 2013 Ordinance is attached hereto as **Exhibit C**.

19. Where a TCI company had issued bearer shares when formed, the 2013 Ordinance gave that company a six-month grace period from the date the 2013 Ordinance became effective to recall the bearer shares and re-issue those shares in the name of a stated (or registered) shareholder (which could be an individual or other entity).

20. If the bearer shares were not recalled or returned to the TCI company within the six-month grace period, the 2013 Ordinance *automatically* declared those bearer shares immediately null and void and without effect for all purposes under TCI law, and the shares were simply re-issued in the name of the owner(s) of the TCI company. The stated objective of the

2013 Ordinance was to identify the owners of the shares, not to deprive them of their ownership interest in the TCI company.

21. Accordingly, as soon as the Belijar Directors became aware that the 2013 Ordinance automatically abolished the Belijar Bearer Shares, the Belijar Directors passed a resolution on or about October 27, 2022, pursuant to the 2013 Ordinance, directing Belijar to re-issue two shares each containing fifty percent (50%) ownership, one share in the name of Bela and the other share in the name of Isaac—the registered owners of Belijar (the "Re-Issued Shares"). A true and correct copy of the October 27, 2022 Resolution is attached hereto as **Exhibit D**. True and correct copies of the Re-Issued Shares are attached hereto as **Composite Exhibit E**.

*Belijar Bearer Shares are Null and Void as a Matter of TCI Law*

22. Isaac passed away on January 1, 2019 in Lima, Peru, and an estate proceeding followed in Peru that is still pending today.

23. At the time of his death, Isaac had four natural heirs: Bela (his wife), Jessica (his only daughter), Defendant (his middle son), and Ruben Galsky (his youngest son) (collectively, the "Heirs").

24. Years after his father's death, Defendant disclosed *for the first time ever* that he held since 2021 the physical Belijar Bearer Shares, allegedly making him the sole owner of Belijar.

25. In making this disclosure, however, Defendant did not take into account the 2013 Ordinance – *the governing law applicable to Belijar* – that abolished the Belijar Bearer Shares seven (7) years before, making the Belijar Bearer Shares Defendant held null and void and without effect under TCI law.

26. Tellingly, Defendant had never previously declared his purported ownership interested in Belijar on his taxes, disclosed his alleged ownership interest in Belijar in the Peruvian estate proceeding, or registered the Belijar Bearer Shares in the TCI as specifically required by Belijar's Articles of Association for the Belijar Bearer Shares to be recognized (prior to the 2013 Ordinance).

27. Because the Belijar Bearer Shares are null and void and without effect under TCI law, Defendant is not the owner of Belijar. The owners of Belijar are Bela and Isaac's estate, each owning a fifty percent (50%) interest in Belijar. (Ex. E.)

*The Estate Proceeding in Peru*

28. Under Peruvian law, upon the death of a spouse, the surviving spouse is automatically entitled to fifty percent (50%) of all marital assets without going through probate.

29. The remaining fifty percent (50%) of the assets of the deceased spouse must go through a probate proceeding through which the probate court determines the heirs and each heir's entitlement to the decedent's probate assets.

30. Here, Bela, as the surviving spouse, ***automatically*** owns fifty percent (50%) of Belijar outside of probate because she owns a fifty percent (50%) interest in Belijar. (Ex. E.)

31. The remaining fifty percent (50%) of Belijar owned by Isaac's estate will be distributed by a Peruvian probate court in the future through a final order at the conclusion of the estate proceeding.

32. However, the Peruvian court has not yet made a final determination as to the distribution of any of Isaac's assets, including the distribution of Isaac's fifty percent (50%) interest in Belijar.

33. Therefore, the remaining fifty percent (50%) of Belijar owned by Isaac's estate has not yet been distributed to any heir, individual, or entity and currently remains the subject of a pending estate proceeding in Peru.

34. As an heir, the Peruvian probate court at the conclusion of the estate proceeding *may* award Defendant a twelve-and-a-half percent (12.5%) interest in Belijar (fifty percent (50%) divided by the four heirs, Bela, Jessica, Ruben and Defendant) or no interest at all in Belijar because under Peruvian law, there is no guarantee that an heir will receive a specific inheritance in every estate asset. Allocation of assets is at the Peruvian court's discretion, so long as each of the Heirs receives their respective 12.5% interest in the overall estate.

35. Accordingly, Defendant has no current ownership in Belijar, and any claim to the contrary is premature.

*The Florida Vacation Home*

36. Belijar purchased the Florida Vacation Home on or about February 1, 2007 for roughly $2,680,000. A true and correct copy of a screenshot from the Miami-Dade County Property Appraiser for the Florida Vacation Home is attached hereto as **Exhibit F**.

37. The current estimated market value of the Florida Vacation Home on Zillow is $3,919,500. A true and correct copy of a screenshot from Zillow for the Florida Vacation Home is attached hereto as **Exhibit G**.

38. Because Belijar is simply a holding company that does not generate revenue, Isaac and Bela always covered the carrying costs, including association fees, assessment and maintenance of the Florida Vacation Home.

39. After Isaac passed away, Bela, Jessica, and Ruben continued to cover the expenses of the Florida Vacation Home. Indeed, Jessica covered some of the expenses of the Florida Vacation Home even before her father passed away.

40. Defendant *never* contributed any money to cover the expenses of the Florida Vacation Home, especially after his father's death on January 1, 2019.

41. This financial burden has grown too much for Bela and Jessica. Consequently, as of today, Belijar owes approximately $120,000 in past-due real estate taxes and approximately $50,000 in past due association fees and other maintenance expenses in connection with the Florida Vacation Home. A true and correct copy of a screenshot from the Miami-Dade County Office of the Tax Collector for the Florida Vacation Home is attached hereto as **Exhibit H**. A true and correct copy of a Claim for Lien for Unpaid Condominium Assessments in connection with the Florida Vacation Home for $15,410.09 (which represents only a part of the debt) is attached here to as **Exhibit I**.

42. Concerned with the inability to pay Belijar's debts and the real possibility of Belijar losing the Florida Vacation Home through a foreclosure or otherwise, Bela and Jessica, on or about April 9, 2024, decided, as the sole Directors of Belijar, that it was in the best interest of Belijar to list and sell the Florida Vacation Home.

43. Accordingly, on April 15, 2024, Bela and Jessica, as the Directors of Belijar, signed a Resolution approving the listing and sale of the Florida Vacation Home. A true and correct copy of the April 15, 2024, Resolution is attached as **Exhibit J**.

*The Ownership Dispute Between the Parties*

44. Even though Defendant has never paid taxes, contributed one cent towards carrying costs, or followed the registration requirements dictated by Belijar's Articles of

Association, Defendant claims he is the one hundred percent (100%) owner of Belijar because he holds the Belijar Bearer Shares issued in 1990.

45. Defendant also claims he has a current ownership interest in Belijar as an heir to his father's estate.

46. Defendant, however, is not the owner of Belijar by virtue of the Belijar Bearer Shares because the 2013 Ordinance abolished the Belijar Bearer Shares, making the Belijar Bearer Shares null and void and without effect for all purposes under TCI law.

47. The current owners of Belijar are Bela and Isaac's estate, each owning a fifty percent (50%) interest in Belijar. (Ex. E.)

48. Similarly, Defendant does not have a current ownership interest in Belijar because Isaac's fifty percent (50%) interest in Belijar is currently one of many assets in Isaac's probate proceeding, which has not yet been adjudicated by the probate court in Peru.

49. Accordingly, because Defendant is not an owner of Belijar – either by virtue of the Belijar Bearer Shares or as an heir of his father's estate prior to a final order by the Peruvian probate court – Defendant has no right to object and/or stop the sale of the Florida Vacation Home or manage, direct, order, or demand anything concerning the sale of the Florida Vacation Home.

## COUNT I
## DECLARATORY JUDGMENT

Belijar hereby incorporates by reference each and every allegation contained in paragraphs 1 through 49 above as if fully set forth herein.

50. There is a *bona fide*, actual, present, and practical need for a declaration resolving the dispute between the parties as to whether Defendant has any present ownership interest in Belijar.

51. Defendant first claims that he owns one hundred percent (100%) of Belijar because he holds the Belijar Bearer Shares issued in 1990. However, the 2013 Ordinance abolished bearer shares as evidence of ownership in any TCI company, long before Defendant claims he received the Belijar Bearer Shares in 2021.

52. More specifically, the 2013 Ordinance made the Belijar Bearer Shares issued in 1990 immediately null and void and without effect for all purposes under TCI law.

53. Notwithstanding the indisputable applicability of the 2013 Ordinance to Belijar and the originally issued Belijar Bearer Shares, Defendant still maintains he is the sole owner of Belijar because he holds the Belijar Bearer Shares.

54. Alternatively, Defendant also claims he has an ownership interest in Belijar because he is an heir to his father's, Isaac, estate.

55. Although Belijar is an asset in Isaac's estate, the Peruvian probate proceeding has not yet concluded who owns Isaac's fifty percent (50%) share of Belijar.

56. Moreover, to the extent the Peruvian court ultimately decides that Defendant is entitled to inherit a part of his father's fifty percent 50% interest in Belijar, the most ownership interest in Belijar Defendant is entitled to inherit is twelve-and-a-half percent (12.5%) – a minority interest easily overruled by the other heirs who are all in favor of selling the Florida Residence.

57. Therefore, a justiciable controversy exists as to whether Defendant has either a 100% ownership interest in Belijar by virtue of the Belijar Bearer Shares he holds, or any current ownership interest in Belijar as an heir to his father's estate.

58. Belijar is entitled to a declaratory judgement pursuant to 28 U.S.C. § 2201 that Defendant has no current ownership interest in Belijar because: (i) the 2013 Ordinance abolished

the Belijar Bearer Shares, making them null and void and without effect for all purposes under TCI law; and (ii) the probate court in Peru presiding over Isaac's estate proceeding is still ongoing with no final determination on whether Defendant will inherit any ownership interest in Belijar.

59. All person(s) with an adverse and antagonistic interest are before the Court.

60. The declaration sought does not amount to mere legal advice.

## COUNT II
## DECLARATORY JUDGMENT

Belijar hereby incorporates by reference each and every allegation contained in paragraphs 1 through 49 above as if fully set forth herein.

61. There is a *bona fide*, actual, present, and practical need for a declaration resolving the dispute between the parties as to whether Defendant has the legal right to object and/or stop the sale of the Florida Vacation Home pursuant to Belijar's Articles of Association.

62. Belijar's Articles of Association govern the management of Belijar. (Ex. A.)

63. Belijar has two Members: Bela (50%) and the Estate of Isaac Galsky (50%).

64. Belijar has two Directors: Bela and Jessica.

65. Bela is also the Chairman of Belijar's Board of Directors.

66. Section 26 of Belijar's Articles of Association provides that "[t]he business of [Belijar] shall be managed and conducted by a Board of Directors consisting of not less than one and such number in excess thereof as the members may from time to time determine…." (Ex. A, p. 13.)

67. Importantly, Section 32(a) of Belijar's Articles of Association states, "[t]he business of [Belijar] shall be managed by the Directors . . . and [the Directors] may exercise all

10

such powers of [Belijar] as are not, by Ordinance or by these regulations required to be exercised by [Belijar] in General Meeting…." (Ex. A, p. 14.)

68. Section 28(c) of Belijar's Articles of Association states, "[t]he Directors may pass a resolution without holding a meeting if a consent in writing setting out the resolution required by all of the Directors…. Such consent shall have the same effect as a unanimous vote." (Ex. A, p. 14.)

69. Accordingly, Belijar's Articles of Association empower the Directors (*i.e.*, Bela and Jessica) to list for sale and sell the Florida Vacation Home through the written Resolution. (Exh. D)

70. Although Defendant may claim he is a member of Belijar because he physically holds the Belijar Bearer Shares (which Belijar denies), Defendant is undeniably not a Director of Belijar.

71. Indeed, on November 11, 2012, Defendant expressly resigned as an officer of Belijar and has never held any position in Belijar since his resignation. A true and correct copy of the Minutes of Special Meeting of the Board of Directors Meeting of Belijar, Ltd. are attached hereto as **Exhibit K**.

72. Accordingly, because Defendant is not a Belijar Director, Belijar's Articles of Association do not grant Defendant the right to object and/or stop the sale of the Florida Vacation Home, and therefore, Defendant's consent to sell the Florida Vacation Home is not necessary– even if Defendant can prove he is a "member" of Belijar (which he is not).

73. Clearly, a justiciable controversy exists as to whether Defendant has the right under Belijar's Articles of Association when he is not a Director of Belijar to: (i) object and/or stop the sale of the Florida Vacation Home; and (ii) manage, direct, order, or demand anything

concerning the sale of the Florida Vacation Home from any party having any involvement in the sale.

74. All person(s) with an adverse and antagonistic interest are before the Court.

75. The declaration sought does not amount to mere legal advice.

WHEREFORE, Plaintiff, BELIJAR LTD., respectfully requests that this Court declare that:

1. Defendant does not own Belijar because the Belijar Bearer Shares Defendant holds are null and void and without effect for all purposes of TCI law pursuant to the 2013 Ordinance;

2. Bela Sandelman de Galsky and the estate of Isaac Galsky are the owners of Belijar, each owning a 50% interest in Belijar;

3. Defendant has no current ownership interest in Belijar because the Peruvian probate court overseeing the administration of Isaac's estate has not yet concluded and entered a final order distributing the assets of Isaac's estate;

4. Defendant is not a Director of Belijar as set forth in Belijar's Articles of Association;

5. Belijar's Articles of Association authorize the Directors of Belijar to list for sale and sell the Florida Vacation Home;

6. Defendant has no right to object and/or stop the sale of the Florida Vacation Home under Belijar's Articles of Association;

7. Belijar's Articles of Association do not grant Defendant the right or ability to manage, direct, order, or demand anything concerning the sale of the Florida Vacation Home;

8. Belijar has the immediate right to sell the Florida Vacation Home; and

9. For such further relief as the Court deems just and proper.

Dated: <u>April 18, 2024</u>

                                        Respectfully submitted,

                                        HOLLAND & KNIGHT LLP
*Attorneys for Belijar Ltd.*
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

By: */s/ Eduardo A. Ramos*
Eduardo A. Ramos
Florida Bar No.:  0189944
Email: eduardo.ramos@hklaw.com
Gary Klubok
Florida Bar No.: 1031678
Email: gary.klubok@hkaw.com
Nicholas Pierre-Paul
Florida Bar No.: 1050766
Email: nicholas.pierrepaul@hklaw.com