UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-21454-DSL

BELIJAR LTD., a Turks and
Caicos company,

    Plaintiff,

v.

ABY GALSKY SANDELMAN,
an individual,

    Defendant.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION TO PAY FOR PLAINTIFF'S ATTORNEY'S FEES
AND OTHER COSTS FROM THE NET SALE PROCEEDS HELD IN ESCROW**

    Plaintiff, Belijar, LTD. ("**Plaintiff**" or "**Belijar**"), respectfully submits this reply in further support of its Motion to Pay for Plaintiff's Attorney's Fees and Other Costs from the Net Sale Proceeds Held in Escrow, ECF No. 50 ("**Motion**" or "**Mot.**"), and in response to the opposition to the Motion, ECF No. 54 ("**Opposition**" or "**Opp.**"), filed by Defendant Aby Galsky Sandelman ("**Defendant**").

**PRELIMINARY STATEMENT**

    During the course of this proceeding and the subsequent sale of the Florida Property, Belijar incurred the following debts at the direction of Belijar's directors pursuant to its Articles of Association: (i) $438,927.21 in legal fees and costs; (ii) $10,350 in accounting fees and costs; (iii) $5,371.75 in moving and storage fees necessary to properly deliver the Florida Property to the buyer; and (iv) $215.50 to cover a shortfall at closing (collectively, the "**Debts**"). All these expenses were absolutely necessary: the legal expense was necessary to save the equity in the

Florida Property by allowing and facilitating the sale; the accounting was necessary to comply with the IRS foreign entity filing requirements, including applying for and processing the FIRPTA refund which most likely will exceed $425,000; the moving and storage expense was necessary to empty and deliver the Florida Property to the buyer in the condition required by the purchase and sale agreement; and the $215.50 shortfall at closing was necessary to record the Corporate Affidavit. Through the Motion, Belijar simply seeks an order allowing it to use its own funds held in escrow (the "**Net Sale Proceeds**") to pay for its own Debts, all of which were necessary for the successful sale of the Florida Property.

In response, Defendant argues that none of these Debts should be paid from the Net Sale Proceeds because: (1) the issue of Belijar's ownership must be first adjudicated; (2) the Mediated Settlement Agreement (the "**MSA**") does not specifically earmark the Net Sale Proceeds to pay the Debts; and (3) an evidentiary hearing to determine the reasonableness of the Debts must occur prior to any distribution.

All of Defendants' arguments, however, are unavailing. *First*, the ownership issue is irrelevant to this Motion because Belijar's Articles of Association grant the *undisputed* Belijar Directors the authority to manage Belijar's day-to-day business affairs, including hiring professionals. Defendant's argument that a court may one-day in the future declare him the owner of Belijar such that he would then replace Belijar's current directors does not change the fact that, as of today, the current Directors remain and that the Debts exist. *Second*, the MSA, on its face, broadly vests the Court with the authority to distribute the Net Sale Proceeds. That there are no specific parameters guiding that authority does not mean the Court cannot order distributions. The opposite. It means the Court's authority is not limited by the MSA. *Finally*, because the Debts arise out of contract, Belijar acknowledges the Debts, and the Debts will be paid with Plaintiff's

own funds, the reasonableness of the Debts is irrelevant. The Debts are contractually owed by Belijar and will remain even if this Court were to deny the Motion.

## ARGUMENT

### I.     The "Ownership" Issue Does Not Preclude Payment of Belijar's Debts

Defendant argues that Belijar's "ownership" must first be resolved before the Court can authorize Belijar to pay its Debts with its own funds because he may be declared Belijar's owner in the future, at which point he may replace the current Directors. Opp. at 7–9. This argument is based entirely on some future act that may or may not happen. More importantly, though, is that, regardless of what may happen in the future, Belijar's current Directors have been, and are, empowered by its Articles of Association to manage Belijar, including hiring professionals.

Specifically, what Defendant may or may not be able to do in the future does not impact in any way the actions already taken by the Belijar Directors. Indeed, Defendant does not dispute that Jessica and Bela Galsky (Defendant's sister and mother) have been, and currently are, Belijar's sole directors. And Belijar's Articles of Association expressly provide that it is the ***directors*** who manage the company, not a potential, future owner. *See* ECF No. 8-1 §§ 26, 28(c), 32(a). That is, even if Defendant is declared Belijar's owner in the future, the Debts that Belijar incurred in the past will remain. That Defendant might want to take issue with the "propriety" of the Directors' corporate decisions is irrelevant to whether Belijar's Debts exist and are owed today.

Moreover, Defendant already attempted to inject the same issue of ownership into this action to question Belijar's Directors' ability to make corporate decisions. *See* ECF No. 29 Arg. § II (Plaintiff's reply in support of its motion for summary judgment, addressing why ownership is irrelevant); ECF No. 32 at 9–10 (same in Plaintiff's opposition to Defendant's motion to dismiss). At the motion-to-dismiss hearing (held shortly before the parties settled), Defendant (to

say the least) struggled to explain this issue's relevance,[1] and, in response, the Court set this case for an expedited evidentiary hearing on its merits. ECF No. 45. On its face, this argument is unavailing because it is based *entirely* on some future act that may or may not happen and will not impact the past.

**II.     This Court Is Authorized To Distribute Plaintiff's Own Funds**

The Court has jurisdiction to address Plaintiff's Motion pursuant to *Kokkonen* and its progeny. *See* Mot. at 4–5. And the Court has the authority to enter an order distributing the Net Sale Proceeds pursuant to the MSA, ECF No. 50-2 ¶ 2.g.3, the parties' stipulations, ECF No. 48, and the Court's dismissal order, ECF No. 49. Defendant does not contest any of this. *See* Opp. at 8 (Defendant "does not dispute" that "this Court has authority" to "distribute the net sales proceeds pursuant" to the MSA). Instead, Defendant argues that the Court may not distribute these funds because the MSA does not "delineat[e] what the proceeds may be used for or how and to whom they may be distributed" and "contains no requirement or even guidelines for the requested disbursements[.]" *Id.* at 1–2, 8, 12–13. That is wrong.

As an initial matter, this Court entered the parties' *stipulated* order of dismissal retaining jurisdiction to enforce the MSA, expressly including to distribute the Net Sale Proceeds. ECF Nos. 48-2 & 49. The only reservation Defendant sought and that the Court adopted was Defendant's ability to contest the Court's subject-matter jurisdiction to distribute the Net Sale Proceeds—not whether the MSA limited the Court's ability to do so. *Id.* Indeed, that is the entire reason why Defendant included the "competent jurisdiction" phrase in the MSA's vesting clause. *See* MSA ¶ 2.g.3. That Defendant no longer disputes jurisdiction is itself telling.

---

[1] Plaintiff is waiting for the transcript from the motion to dismiss hearing. Plaintiff intends to submit that transcript to assist the Court's review of the Motion and of the parties' positions, some of which were addressed by the Court at the prior hearing.

4

Regardless, Defendant's interpretation of the MSA is flawed. The MSA's broad vesting clause is exactly that: a broad vesting clause. That the MSA does not delineate specific parameters that guide the Court's power to distribute does not mean the Court cannot distribute from the Net Sale Proceeds. Just the opposite. The broad vesting clause means the parties vested the Court with full authority to enforce the MSA and distribute the funds with **no limitation**. *See, e.g.*, *Interline Brands v. Chartis Specialty Ins.*, 749 F.3d 962, 966 (11th Cir. 2014) (rejecting argument that provision was unenforceable simply because it was broadly drafted rather than including specific parameters). Indeed, under Defendant's interpretation, despite this Court having the authority to distribute the funds, it would never be able to order any distribution, thus improperly rendering the vesting clause entirely meaningless. *See, e.g.*, *Bethany Trace Owners' Ass'n v. Whispering Lakes I*, 155 So. 3d 1188, 1193 (Fla. 2d DCA 2014) (reversing trial court for interpreting contract in a way that rendered provisions meaningless).

## III. The Motion Does Not Require a "Reasonableness" Evidentiary Hearing

Defendant demands an evidentiary hearing to address the "reasonableness" of the Debts. *See* Opp. at 9–12. However, reasonableness is irrelevant to the Motion. And even if reasonableness were relevant, the Court is more than well-situated to adjudicate the Motion without an evidentiary hearing because the Debts are facially reasonable simply from a view of the papers.

### A. An Evidentiary Hearing on "Reasonableness" is Not Relevant or Required

Where a dispute is pending between a creditor and a debtor, and the debt arises out of contract, the "reasonableness" of that debt is irrelevant. *See, e.g.*, *Willis v. Nova Cas. Co.*, No. 21-13778, 2023 WL 334567, at *2 (11th Cir. Jan. 20, 2023) (affirming district court's adoption of magistrate's recommendation that "explicitly declined to consider the reasonableness of the fees" because where the fees are "governed by a contractual fee agreement," a "court may not rewrite

the agreement based on what it considers to be a reasonable fee"). The only question, then, is whether Belijar incurred the Debts. *See id.*

Here, Plaintiff seeks an order to distribute its own Net Sale Proceeds from the sale of its own property to pay for its own Debts. This is not a cost-shifting motion; it is not asking that Defendant pay for anything. And there is no dispute that these Debts were incurred. Instead, Defendant resists the Motion by asserting the Court must first conduct an evidentiary hearing to determine the "reasonableness" of the Debts. Opp. at 9–12. Doing so, however, would be reversible error. *See, e.g.*, *Rodriguez v. Altomare*, 261 So. 3d 590, 591–92 (Fla. 4th DCA 2018) (reversing trial court for addressing reasonableness of fees as between the client and attorney, collecting cases holding "reasonableness" is irrelevant where the client—rather than the opposing party—is paying its own debt). Indeed, what Defendant proposes makes no practical sense. If the Court were to authorize the disbursement of anything less than the full amount needed to satisfy the Debts, the unsatisfied amount will remain a debt owed by Belijar which could be collected through a breach of contract action.

**B.    An Evidentiary Hearing Would Be Wasteful And Unnecessary**

Even if "reasonableness" were relevant to the Motion (it is not), the debts are facially reasonable without the need for an evidentiary hearing.

***i.    There Is No Need For An Evidentiary Hearing***

Contrary to Defendant's demand for an evidentiary hearing on reasonableness (Opp. at 9–12), such a hearing is the exception, not the rule. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303–04 (11th Cir. 1988) (collecting cases, noting courts do not need an evidentiary hearing even where the record is not entirely clear because whether fees are reasonable is inherently within the court's expertise). Rather, the expectation is that, where reasonableness is

6

relevant to a given fee motion, the court will decide that motion on the papers "based solely on affidavits in the record" and "without the need of further pleadings or an evidentiary hearing." *Id.*

Further, Defendant has not even identified a genuine dispute of any material fact relevant to the Motion—certainly none that are outside the Court's expertise to support the need for an evidentiary hearing. *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (affirming district court's fee ruling despite not holding an evidentiary hearing after it was requested because purported disputed issues were within court's expertise). To be sure, Defendant seeks to question the "propriety"[2] of Belijar's directors' decisions to incur these Debts and the Debts' general "reasonableness." Opp. at 10–11. But none of those issues are relevant to the Motion, and even if they were, Defendant did not identify a specific dispute of fact.

Simply put, Defendant failed to meet his burden in requesting an evidentiary hearing, which, under the circumstances, is unnecessary and would do nothing but further increase the costs and delay this matter. And to the extent the Court finds reasonableness is a relevant inquiry, it is more than well equipped to address those issues on the papers, as discussed below.

### ii.    The Debts Are Facially "Reasonable"

The Debts incurred by Belijar are reasonable. *See* Mot. at 7–8 (discussing expenses); *see also* ECF Nos. 50-6 ¶¶ 16–27, 50-3, 50-4, 50-5; **Composite Exhibit A** at BELIJAR-000066–77. The legal fees were necessary to give effect to, and recover the full value of, the sale of the Florida Property. The accounting fees were necessary to comply with the IRS foreign entity filing

---

[2] Relatedly, because Defendant is neither a contracting party nor third-party beneficiary to any of underlying agreements for professional services, he has no "standing" to interpret or contest those agreements. *Companion Prop. & Cas. Ins. v. Category 5 Mgmt. Grp.*, 189 So. 3d 905, 908 (Fla. 1st DCA 2016) (reversing trial court for adopting "absurd" interpretation of legal-fee agreement that would have meant counsel worked "pro bono," emphasizing opposing party had no "standing" to even interpret that agreement because they were neither a party nor an intended beneficiary of the fee agreement).

requirements, including applying for and processing the FIRPTA refund which most likely will exceed $425,000. The moving and storage expenses were necessary to empty and deliver the Florida Property to the buyer in the condition required by the purchase and sale agreement. agreement (an agreement to which Defendant agreed). And the $215.50 shortfall at closing was necessary to record the Corporate Affidavit. Importantly, despite contesting reasonableness generally, Defendant does not actually contest that any of these expenses were unreasonable or unnecessary. *See generally* Opp.

Further, regarding the legal fees, there are two prevailing "reasonableness" inquiries depending on whether the court is faced with a "common-fund" or a "fee-shifting" scenario. *See, e.g.*, *In re Home Depot Inc.*, 931 F.3d 1065, 1078–79 (11th Cir. 2019) (discussing and contrasting "common-fund" from "fee-shifting" cases in attorney-fee motions). To the extent reasonableness is relevant, the Motion falls far more under the former rather than the latter scenario.

***Common Fund.*** Where the funds that will be used to pay for a given debt are "common" to the various payors whose interests are not directly represented before the court (such as in class actions where numerous plaintiffs are not directly present), the "reasonableness" of the expense is based on a "percentage-of-recovery" analysis. *Id*. There, expenses are reasonable where they fall within 20 to 30% of the recovery. *See, e.g.*, *Waters v. Int'l Precious Metals*, 190 F.3d 1291, 1294 (11th Cir. 1999) (20-to-30% reasonable); *see also Faught v. Am. Home Shield*, 668 F.3d 1233, 1242–43 (11th Cir. 2011) (noting where "requested fee exceeds 25%," court must engage in a multi-factor analysis). Here, under a "percentage-of-recovery" analysis, the sought expenses are reasonable. Holland & Knight LLP ("**H&K**") recovered a total of $3.25 million in gross proceeds and $2.094 million in net proceeds. *See, e.g.*, ECF No. 50-6 ¶ 14. To do so, H&K incurred $438,927.21. *Id*. ¶ 15. That represents approximately 13.5% and 20.9% of the gross and net sale

proceeds, respectively. Such an expense falls well within (if not far under) the 20 to 30% reasonableness benchmark. That is particularly the case here, given the high complexity of the dispute and the high risk that H&K would not get paid at all.[3]

      ***Fee Shifting***. By contrast, where the funds that will be used to pay for the expense come from the *opposing party* rather than the actual debtor, the "reasonableness" of that award is based on a "lodestar" analysis. *See, e.g.*, *In re Home Depot*, 931 F.3d at 1078–79. There, awarded expenses are reasonable where both the rate and time spent are reasonable under the totality of the circumstances. *Id.* Here, because the funds that will be used to pay for the Debts come entirely from the debtor (Plaintiff) who is before the Court, "reasonableness" is irrelevant for the reasons discussed above. And, regardless, as between the "common-fund" and "fee-shifting" scenarios, the Motion is far more akin to the common-fund scenario. Indeed, Defendant will not be paying for anything himself such that there is no friction with the general American rule that parties pay for their own legal expenses—the entire purpose for the safeguards afforded through a robust lodestar analysis.[4]

---

[3] *See generally, e.g.*, ECF No. 32 (Plaintiff's opposition to motion to dismiss discussing, among other things, other legal proceedings pending between Defendant and his family); ECF No. 30-2 (state-court answer to Defendant's complaint discussing, among other things, Peruvian probate proceedings); ECF No. 29 (Plaintiff's reply in support of summary judgment discussing, among other things, criminal proceedings against Defendant regarding his money laundering); Opp. (Defendant discussing Florida State Court Action, Peru Action, and TCI Action); *see also* ECF No. 50-6 ¶ 27; Ex. A at 2 (Response to Request 2); *id.* at BELIJAR-000065 (noting all outstanding invoices); BELIJAR-000004 (payment "Due On Receipt").

[4] Plaintiff posits that a lodestar analysis is improper and unnecessary for the reasons discussed above. Nevertheless, in the interest of transparency and to more efficiently address the Motion, Plaintiff attaches non-privileged materials responsive to Defendant's discovery requests, including the Holland & Knight, LLP invoices. *See* **Composite Exhibit A**.

## CONCLUSION

In sum, Defendant is the sole reason why Belijar had to incur H&K's fees. When Plaintiff attempted to save the equity in the Florida Property before a tax-foreclosure sale, Defendant recorded his Notice of Equitable Interest in Real Property (ECF No. 8-8) to intentionally block the sale. But for Defendant's own conduct, there would have been no legal fees to pay. Defendant cannot now question the "propriety" of Belijar's Directors' decisions to incur these Debts and the Debts' general "reasonableness."

Accordingly, for the reasons discussed above, the Motion should be granted and an order entered authorizing the necessary distribution from the Net Sale Proceeds to pay Belijar's Debts. Plaintiff also respectfully reserves its right to seek additional disbursements from the Net Sale Proceeds to repay any further obligations incurred by Belijar in connection with this matter, including but not limited to, the additional legal fees and costs incurred in litigating the instant Motion and any other post-closing related expenses.

Dated: April 9, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP
*Attorneys for Belijar Ltd.*
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

By: */s/ Eduardo A. Ramos*
Eduardo A. Ramos
Florida Bar No.: 0189944
Email: eduardo.ramos@hklaw.com
Gabriel Godoy-Dalmau
Florida Bar No.: 1036181
Email: gabriel.godoy-dalmau@hklaw.com
Gary Klubok
Florida Bar No.: 1031678
Email: gary.klubok@hkaw.com