UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21454-LEIBOWITZ/LOUIS

**BELIJAR LIMITED,**

    *Plaintiff,*

v.

**ABY GALSKY SANDELMAN**,

    *Defendant.*

_____/

## ORDER

THIS MATTER was referred to United States Magistrate Judge Lauren F. Louis for a Report and Recommendation on Plaintiff Belijar Limited's ("Plaintiff" or "Belijar") Motion to Pay for Attorney's Fees and Other Costs from the Net Sales Proceeds Held in Escrow ("the Motion") [ECF No. 50], filed on March 19, 2025. On May 12, 2025, Judge Louis issued a Report and Recommendation ("the R&R") [R&R, ECF No. 63], recommending that the Court deny Plaintiff's Motion. Plaintiff submitted an Objection to Report & Recommendation [Objection, ECF No. 66], filed on May 27, 2025, to which Defendant Aby Galsky Sandelman ("Defendant") filed a response [Resp., ECF No. 67] on June 9, 2025. Plaintiff filed a reply [ECF No. 68] on June 16, 2025.[1] After careful review of the filings, the applicable law, and the record, this Court respectfully declines to adopt the R&R and grants Plaintiff's Motion [ECF No. 50] in its entirety.

## BACKGROUND

Plaintiff initiated the underlying action seeking: (1) a declaratory judgment that the purported directors of Belijar—Jessica and Bela Galsky—were authorized to sell a residential apartment in Sunny

---

[1] Rule 72(b) of the Federal Rules of Civil Procedure does not contemplate any replies. *See* Fed. R. Civ. P. 72(b). Still, this Court does not strike the filing because it would come to the same result regardless of whether it considers the reply.

1

Isles Beach, Florida ("the Florida Property"), and (2) an order directing Defendant to withdraw a Notice of Equitable Interest to the Florida Property he had recorded in Miami-Dade County. [Am. Compl., ECF No. 8]. The Parties filed a Joint Notice of Settlement on August 7, 2024, in which they note that the parties agreed to settle the case in the Mediated Settlement Agreement ("the Settlement Agreement"), whereby the parties agreed to sell the Florida Property and to dismiss all of Plaintiff's claims without prejudice. [ECF No. 48; Settlement Agreement, ECF No. 48-1].

The relevant sections of the Settlement Agreement are Paragraph 2(f), Paragraph 2(g), and Paragraph 3. Paragraph 2(f) enumerates eight transfers to be executed by the title agent pursuant to an approved closing statement and does not name the source from which those funds were to be transferred. [Settlement Agreement ¶ 2(f)]. Immediately following Paragraph 2(f), Paragraph 2(g) states that the "net proceeds from the sale of the Florida Property shall be deposited and held in an escrow account with Holland & Knight until any of the following" three conditions are triggered: (i) a written agreement of the parties on distribution, (ii) a final non-appealable order from the probate court in Peru, or (iii) upon "any lawful final non-appealable order from a court of competent jurisdiction directing the distribution of the [N]et [S]ale [P]roceeds." [*Id.* ¶ 2(g)(i)–(iii)].

Paragraph 3 details that the parties shall file a Stipulation of Dismissal without Prejudice, "with the Court to retain jurisdiction to adjudicate the distribution of the Net Sale Proceeds from the sale of the Florida Property, without prejudice to Aby to contest the Court's jurisdiction." [*Id.* ¶ 3]. On August 12, 2024, the parties jointly moved this Court to adopt their proposed Conditioned Dismissal Order, which included a clause requesting this Court retain jurisdiction "to adjudicate the distribution of the [N]et [S]ale [P]roceeds." [ECF No. 48-2].

The Court subsequently entered an order the same day, August 12, 2024, dismissing the action without prejudice and "retain[ing] jurisdiction to enforce the terms of the parties' Mediated Settlement Agreement, **including to adjudicate the distribution of the Net Sale Proceeds from the sale of**

**the Florida Property**, without prejudice to Aby to contest the Court's jurisdiction." [Dismissal Order, ECF No. 49 (emphasis added)]. The Court's Order ("the Dismissal Order") adopted verbatim the post-dismissal jurisdictional language agreed to by the parties in the Proposed Conditioned Dismissal Order Without Prejudice [ECF No. 48-2].

After the Court entered the Dismissal Order, the parties sold the Florida Property and completed all the transfers specified in Paragraph 2(f). [*See* Mot. at 4 ("Over the following six months, the Belijar Directors and H&K worked together to sell the Florida Property, and, on February 14, 2025, Belijar sold the Florida Property for $3,250,000. After paying the agreed-upon expenses at closing, Belijar deposited the Net Sales Proceeds totaling $2,094,936.59 in the H&K trust account, where the Net Sale Proceeds remain today."); *see also* Transcript of April 23, 2025, Hearing ("H'g Tr."), ECF No. 62 at 5:5–14; Defendant's Response to Plaintiff's Motion, ECF No. 54 at 5].

On March 19, 2025, Plaintiff moved this Court to enter an order authorizing the following disbursement of funds, currently held in trust by Holland & Knight ("H&K"), from the Net Sale Proceeds of the Florida Property: (1) $438,927.21 to H&K for unpaid legal fees and costs; (2) $10,900.00 to Michael Blanco CPA PA, Inc. for accounting and tax services; (3) $215.50 to Alex D. Siulkik, P.A. for unpaid closing costs of the Florida Property; and (4) $5,371.75 to Belijar's directors for expenses related to the sale of the Florida Property. [ECF No. 50 at 9]. This Court referred the Motion to Judge Louis for an R&R. [ECF No. 51]. The Court held a Hearing on the Motion ("the Hearing") before Judge Louis on April 23, 2025. [H'g Tr.]. On May 12, 2025, Judge Louis recommended that this Court deny Plaintiff's Motion to Disburse on the grounds that (a) this Court lacks jurisdiction to grant the Motion, (b) the Settlement Agreement suggests that the Parties did not intend for this Court to direct unenumerated distributions of the Net Sale proceeds, and (c) Plaintiff's Motion fails to establish why the Court should order disbursements not set forth in the Agreement. [R&R at 5].

3

**LEGAL STANDARD**

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (cleaned up); *see also Butler v. Emory Univ.*, 45 F. Supp. 3d 1374, 1382 (N.D. Ga. 2014) (citing 28 U.S.C. § 636(b)); Fed. R. Civ. P. 72(b)(2). The objections must also present "supporting legal authority." L. Mag. J.R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783–84 (cleaned up). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Id.* at 784 (cleaned up).

**DISCUSSION**

The parties and the R&R raise several arguments regarding this Court's jurisdiction to adjudicate the distribution of the Net Sale Proceeds under the Settlement Agreement and the Dismissal Order. The Court addresses these issues in three parts. First, the Court explains why it retains jurisdiction under Federal Rule of Civil Procedure 41(a)(2) and the express terms of its Dismissal Order. Second, the Court clarifies why Paragraph 2(g) of the Settlement Agreement is not dispositive of its jurisdiction and why Paragraph 3, along with the Dismissal Order, governs here. Third, the Court explains why Plaintiff's requested relief falls within the retained jurisdiction of this Court to adjudicate the distribution of the Net Sale Proceeds in this post-dismissal proceeding.

I.  **The Court has Subject-Matter Jurisdiction.**

Although the Court's original jurisdiction has not been in dispute, the Court notes that it has had both personal jurisdiction over Defendant and subject matter jurisdiction over this matter from

inception. On June 26, 2025, this Court ordered briefing as to Plaintiff's principal place of business to ensure that it had subject matter jurisdiction over the underlying lawsuit. [ECF No. 69]. A federal court "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see Wilkins v. United States*, 598 U.S. 152, 157 (2023) ("Jurisdictional bars . . . may be raised at any time and courts have a duty to consider them *sua sponte*.") (cleaned up). Regardless of the stage of proceedings, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," depriving the court of authority to decide the dispute. Fed. R. Civ. P. 12(h)(3).

After considering the submissions of the parties, this Court concludes that Belijar, a holding company, has no principal place of business and is therefore solely a citizen of Turks and Caicos, its state of incorporation.[2] A company which does not engage in any business activity has no principal place of business. *See Holston Invs. v. LanLogistics*, 677 F.3d 1068, 1070–71 (11th Cir. 2012) (citing *Hertz v. Friend*, 559 U.S. 77, 89–96 (2010)) (holding dissolved entity has no principal place of business); *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) (holding that an "inactive corporation"—that is, a "corporation conducting no business activities"—has "no principal place of business, and is instead a citizen of its state of incorporation only"); *Centcorp Invs. v. Folgueira*, 2014 WL 12584298, at *2–3 (S.D. Fla. Sept. 4, 2014) (applying *Hertz*, *Holston*, and *Hansen*, holding that the plaintiff had no "principal place of business" because it was a "holding company" that was "conducting no business activities"); *see also Helix Inv. Mgmt. v. Privilege Direct*, 364 F. Supp. 3d 1343, 1348 (M.D. Fla. 2019). Given the diversity of citizenship of the parties, this Court has subject-matter jurisdiction.

---

[2] [*See* Decl., ECF No. 71-1 at 1 ¶¶ 4–5 (explaining that Belijar "does not, and has never, engaged in any commercial business activity" and that "it has operated exclusively as a holding company); *see also* ECF No. 30-1 ¶¶ 1–2, 7–8 (same)].

Accordingly, this Court had authority to issue the Dismissal Order that retained jurisdiction to enforce the agreement and adjudicate the distribution of the Net Sale Proceeds, and its terms are binding. *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1280 (11th Cir. 2012) (explaining that a court may retain jurisdiction over a settlement only if it has subject-matter jurisdiction over the case).

## II. This Court retained jurisdiction to adjudicate the distribution of the Net Sale Proceeds under Rule 41(a)(2) of the Federal Rules of Civil Procedure and the express terms of its Dismissal Order.

This Court's jurisdiction to adjudicate the distribution of the Net Sale Proceeds arises from its own Dismissal Order. Rule 41 of the Federal Rules of Civil Procedure provides that a court may dismiss an action on "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Once a court does so, it retains jurisdiction to address post-dismissal matters embraced by its dismissal order. *See Anago Franchising, Inc.*, 677 F.3d at 1276 ("Under Rule 41(a)(2), the court has discretion to dismiss the case through an order and to specify the terms of that dismissal"); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (noting that a district court could retain jurisdiction to enforce a settlement agreement with consent of the parties and of the court, provided the district court issues an order requiring compliance with the settlement agreement).

The Dismissal Order expressly retained jurisdiction "to enforce the terms of the parties' Settlement Agreement, *including* to adjudicate the distribution of the [N]et [S]ale [P]roceeds from the sale of the Florida Property." [Dismissal Order (emphasis added)]. Plaintiff seeks precisely such enforcement of the Order through its Motion to Disburse, requesting that the Court "adjudicate the distribution of the [N]et [S]ale [P]roceeds from the sale of the Florida Property." [Resp. at 2]. Granting this Motion is the very adjudication of the distribution of the Net Sale Proceeds over which this Court retained jurisdiction.

Whether the parties intended this Court to be one of the "court[s] of competent jurisdiction" in the Settlement Agreement is a separate question than whether this Court actually has subject-matter

6

jurisdiction, because parties cannot vest a federal court with subject-matter jurisdiction by agreement. *Anago Franchising*, 677 F.3d at 1279; *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983). Although the Settlement Agreement is not the source of this Court's subject-matter jurisdiction, the fact that both parties stipulated to this Court retaining jurisdiction to adjudicate the distribution of the Net Sale Proceeds illuminates the parties' mutual intent for the role of this Court post-dismissal.

The R&R cites *Kokkonen*, 511 U.S. 375, as a limitation on this Court's post-dismissal jurisdiction and concludes that granting the Motion to Disburse would not be an enforcement of the Settlement Agreement. [R&R at 5]. With great respect, this Court disagrees. The district court in *Kokkonen* signed a Stipulation and Order of Dismissal that "did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement." *Kokkonen*, 511 U.S. at 377. The Supreme Court in *Kokkonen* noted, however, that in the event that "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal, . . . . ancillary jurisdiction to enforce the agreement would therefore exist" in the district court. *Id.* at 381. The Court added that this may be done through "a provision 'retaining jurisdiction' over the settlement agreement." *Id.* This Court did just that in its Dismissal Order.

The R&R construed the Court's post-dismissal jurisdiction "to enforc[ing] the terms of the parties' Mediated Settlement Agreement[,]" under *In re T2 Medical, Inc.*, 130 F.3d 990 (11th Cir. 1997). [R&R at 4, 6]. The R&R contends that, like *In re T2 Medical*, "there is nothing left to 'enforce' with respect to the Stipulation" here, where the Plaintiff allegedly "seeks relief not stipulated to in the Settlement Agreement." *In re T2 Medical*, 130 F.3d at 993; [R&R at 6–7]. This Court, however, finds *In re T2 Medical* distinguishable from the case here. There, the district court retained jurisdiction over the enforcement of the settlement agreement until "every act agreed to be performed . . . has been performed." *In re T2 Medical*, 130 F.3d at 992. Once the parties performed every act agreed to in the

7

stipulation of dismissal, the district court had "no authority or jurisdiction to consider the plaintiffs' motion because there [was] nothing left to 'enforce' with respect to the Stipulation." *Id.* at 993. Unlike *In re T2 Medical*, though, this Motion to Disburse seeks relief that is specifically listed in the Settlement Agreement: adjudication of the Net Sale Proceeds of the sale of the Florida Property, which is tied directly to the underlying lawsuit (brought to sell the Florida Property).

Indeed, the parties here stipulated and agreed for this Court to retain jurisdiction not only to enforce the terms of the Settlement Agreement generally, but also specifically "to adjudicate the distribution of the Net Sale Proceeds from the sale of the Florida Property[.]" [Dismissal Order]. The parties' Proposed Conditioned Dismissal Order likewise specified that the Court retain jurisdiction to adjudicate the distribution of the Net Sale Proceeds, placing the clause regarding jurisdiction in parentheses alongside the proposition for retention of jurisdiction to enforce the terms of the parties' Settlement Agreement. [ECF No. 48-2]. Plaintiff's Motion requests that this Court enforce the Settlement Agreement through precisely such an adjudication.

Giving these terms their plain meaning, the parties intended this Court to be "a court of competent jurisdiction" to adjudicate the distribution of the Net Sale Proceeds, and the Court's express retention of jurisdiction authorizes it to order Plaintiff's requested relief here. *See Kokkonen*, 511 U.S. at 381–82 (holding that on a Rule 41(a)(2) dismissal, a district court is authorized to retain jurisdiction over the terms of the settlement agreement). Accordingly, the Motion falls within the scope of both Rule 41(a)(2), which permits dismissal by court order upon terms the court considers proper, and the conditions set forth in *Kokkonen*, which allow the Court to retain jurisdiction over the Settlement Agreement when dismissal is predicated on the terms of the parties' settlement agreement.

### III. Paragraph 2(g) of the Settlement Agreement is not dispositive of this Court's jurisdiction, and Paragraph 3, along with the Dismissal Order, governs here.

In short, I agree with Judge Louis that Paragraph 2(g) specifically does not address the authority of this Court to order distribution of the Net Sale Proceeds, but that does not lead to the

8

ultimate jurisdictional conclusion reached by the R&R. Instead, my interpretation of the Settlement Agreement proceeds in three steps. First, Paragraph 2(g)(iii) does not grant this Court jurisdiction to distribute the Net Sale Proceeds; rather, that provision addresses what H&K may do once certain conditions are met. Next, this Court is "a court of competent jurisdiction" under the Settlement Agreement. Finally, the Settlement Agreement's specific list of disbursements in Paragraph 2(f)—transfers and deductions that are taken from the gross sale proceeds of the property—does not preclude the relief sought in the Motion.

    a. <u>The Dismissal Order did not direct the distribution of the Net Sale Proceeds, and Paragraph 2(g)(iii) does not grant this Court jurisdiction to distribute the Net Sale Proceeds.</u>

Paragraph 2(g)(iii) specifies that the Net Sale Proceeds may be distributed "pursuant to any lawful final non-appealable order from a court of competent jurisdiction *directing the distribution of the [N]et [S]ale [P]roceeds*." [Settlement Agreement ¶ 2(g)(iii) (emphasis added)]. This Court's Dismissal Order did not "direct[] the distribution of the [N]et [S]ale [P]roceeds," but rather merely retained jurisdiction to do so. The directive of Paragraph 2(g)(iii) only ripens when an order "directing the distribution of the [N]et [S]ale [P]roceeds" (this Order) becomes final and non-appealable. Paragraph 2(g) as a whole simply directs that Net Sale Proceeds shall be deposited and held in an escrow account with H&K until one of three specified conditions occur. [Settlement Agreement ¶ 2(g)]. To comply with Paragraph 2(g)(iii), H&K can only actually distribute the Net Sale Proceeds pursuant to "any lawful final non-appealable order[.]" [Settlement Agreement ¶ 2(g)(iii)]. As such, Paragraph 2(g)(iii) itself has no impact upon the Motion.

    b. <u>This Court is "a court of competent jurisdiction" under the Settlement Agreement.</u>

The Settlement Agreement's reference to "a court of competent jurisdiction" in Paragraph 2(g)(iii) does not negate jurisdiction for this Court; as explained above, this Court has expressly retained jurisdiction under Rule 41(a)(2), and nothing in the Settlement Agreement deprives this Court of jurisdiction otherwise. The R&R treats Paragraph 2(g)(iii) as a limitation on this Court's jurisdiction,

9

concluding that "the textual deviation between 'court of competent jurisdiction' in Paragraph 2g(iii) and 'the Court' in Paragraph 3 suggests that the Parties did not intend for this Court to direct unenumerated distributions of the [N]et [S]ale [P]roceeds." [R&R at 5]. Judge Louis found that this semantic distinction between "a court of competent jurisdiction" [Settlement Agreement ¶ 2(g)] and "the Court" [*Id.* ¶ 3] indicated that the parties intended a different court than this one to adjudicate disbursement of Net Sale Proceeds.

But a "court of competent jurisdiction" is a broader category and not at all in conflict with the Agreement's reference to "the Court" in Paragraph 3. Paragraph 2(g)(iii)'s direction that H&K can only distribute Net Sale Proceeds pursuant to "any lawful final non-appealable order from a court of competent jurisdiction" *includes such an order from this Court.* Moreover, had the parties not intended for this Court to be considered one "of competent jurisdiction" over such post-dismissal adjudication, the Settlement Agreement would not have stated expressly that this Court would retain jurisdiction over this exact matter, as it did in Paragraph 3.

The specific references to "the Court" in Paragraph 3 and "a court of competent jurisdiction" in Paragraph 2(g) reflect necessary distinctions given the different contexts of each clause. Paragraph 3 pertains specifically to dismissal of this action and necessarily limited its address to "the Court," since the action's dismissal is a function within the sole province of this federal district court. By contrast, Paragraph 2(g)(iii) acknowledges that there are multiple courts "of competent jurisdiction" and allows for adjudication of Net Sale Proceeds by *any* such courts of competent jurisdiction (of which this Court is one).

Under the R&R's view, any post-dismissal order from this Court cannot trigger the condition in Paragraph 2(g)(iii) of a "lawful final non-appealable order from a court of competent jurisdiction directing the distribution of the [N]et [S]ale [P]roceeds," since this Court (according to the R&R) is excluded as a competent tribunal under that clause. The R&R thus concludes the Settlement

10

Agreement does not confer jurisdiction on this Court to enforce that clause of the Agreement in directing such distributions. However, this interpretation overlooks the plain meaning of the terms used in Settlement Agreement and the broader context of the litigation itself. As the Defendant notes, multiple lawsuits over Belijar's ownership are pending across three other jurisdictions. [Resp. at 1]. Accordingly, the language in Paragraph 2(g)(iii) simply acknowledges the possibility that various courts may be of "competent jurisdiction" to direct the distribution of the Net Sale Proceeds, including this one. Plaintiff further underscores a simple fact: the Settlement Agreement was drafted *before* this Court had agreed to retain jurisdiction to adjudicate distribution, so the parties needed to recognize other potential forums for adjudication to give Plaintiff the contractual right to withdraw funds and direct sale proceeds. [Objection at 7].

The Eleventh Circuit construes contractual declarations "as a whole and will avoid treating terms 'as redundant or mere surplusage' if 'any meaning, reasonable and consistent with other parts, can be given to it.'" *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1294 (11th Cir. 2019) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009)). This Court, therefore, applies the canon against surplusage to ensure every word in the Agreement is given due effect, under the assumption the parties chose their language deliberately and carefully. To read Paragraph 2(g)(iii) as excluding this Court would render meaningless both Paragraph 3's retention of this Court's "jurisdiction to adjudicate the distribution of the [N]et [S]ale [P]roceeds" and this Court's Dismissal Order affirming that retention. [Settlement Agreement ¶ 3; Dismissal Order]. Likewise, viewing the list of disbursements in Paragraph 2(f) as the only disbursements that could be made would render meaningless both Paragraph 3 and the parties' proposed dismissal order retaining this Court's jurisdiction "to enforce the terms of the parties' Mediated Settlement Agreement (including to adjudicate the distribution of the *[N]et [S]ale [P]roceeds* from the sale of the Florida Property)." [Settlement Agreement; ECF No. 48-2 (emphasis added)].

11

This Court's interpretation ensures that the Court's retention of jurisdiction to adjudicate the distribution of Net Sale Proceeds in Paragraph 3 is given effect alongside the separate purposes of Paragraph 2(g)(iii), avoiding any surplusage. In sum, this Court is indeed "a court of competent jurisdiction" to adjudicate the distribution of the Net Sale Proceeds as contemplated by the Settlement Agreement (and the Dismissal Order).

    c. <u>The Net Sale Proceeds are distinct from the Gross Sale Proceeds, and distribution of Net Sale Proceeds is not limited to the transfers enumerated in Paragraph 2(f).</u>

Because this Court has jurisdiction to adjudicate the Motion, the Court shall discuss its understanding of the contemplated "Net Sale Proceeds." Judge Louis rightly noted that the scope of the Court's jurisdiction in these post-dismissal proceedings is "to enforce the terms of the parties' Settlement Agreement, including to adjudicate the distribution of the Net Sale Proceeds from the sale of the Florida Property." [Dismissal Order; R&R at 4]. The R&R interpreted the disbursements requested in Plaintiff's Motion as exceeding the scope of mere "enforcement" of the Settlement Agreement, pointing to the Agreement's enumeration of eight specific expenses in Paragraph 2(f) which were authorized from the proceeds of the sale of the Florida Property. Interpreting this list under the canon of *expressio unius*, Judge Louis concluded that the eight stipulated expenses indicated the full extent of the expenses to be paid and disbursed from the sale proceeds. [R&R at 4–5]. However, the "Net Sale Proceeds" in Paragraphs 2(g) and 3 and the total proceeds from the sale of the Florida Property ("the Gross Sale Proceeds")[3]—from which the Paragraph 2(f) transfers were to be made—are distinct. Nothing about Paragraph 2(f) limits what may be disbursed as "Net Sale Proceeds;" in fact, Net Sale Proceeds are what remain after the expenses listed in Paragraph 2(f) are deducted from the Gross Sale Proceeds.

---

[3]    Plaintiff has used the language of "gross sale proceeds" in post-Motion documents and at the hearing. [*See* ECF Nos. 58 at 8; 66 at 3, 8; H'g Tr. at 13:12, 14:7].

12

The Gross Sale Proceeds from the sale of the Florida Property totaled $3.25 million and, after payment of the enumerated Paragraph 2(f) post-closing costs, the Net Sale Proceeds totaled $2.094 million. [ECF No. 58 at 8]. The Defendant himself defined the Net Sale Proceeds as what remains "*after* everything we have agreed to be paid from the sale." [H'g Tr. at 22:2–9 (emphasis added)]. This statement reveals an inherent distinction between the Gross Sale Proceeds (total sale proceeds *before* the Paragraph 2(f) transfers) and the Net Sale Proceeds (remaining sale proceeds *after* the Paragraph 2(f) transfers). Plaintiff corroborated this interpretation at the same hearing, explaining that the Paragraph 2(f) items "were debts that were paid from the gross sale proceeds. [Specifically,] those were debts that we knew in advance needed to be paid to be able to get a realtor to be able to go ahead and list and sell the property." [H'g Tr. at 13:11–16]. Further, looking only at the Settlement Agreement, the Net Sale Proceeds are only discussed *after* Paragraph 2(f), logically supporting the temporal distinction referred to by both Plaintiff and Defendant. The Court, therefore, understands the Net Sale Proceeds to refer to what remains after the Paragraph 2(f) transfers were made from the Gross Sale Proceeds.

The very existence of the Net Sale Proceeds presupposes that the Paragraph 2(f) enumerations were satisfied from the Gross Sale Proceeds, as the creation of the Net Sale Proceeds necessitated an original, gross amount of sale proceeds. Since the parties themselves agreed and contemplated that the Net Sale Proceeds are distinct from the Gross Sale Proceeds used to pay the Paragraph 2(f) items, the *expressio unius* canon does not apply to restrict disbursements from the Net Sale Proceeds to the requested disbursements here. Accordingly, transfers out of the Net Sale Proceeds are not tied to or limited by the Paragraph 2(f) enumerations.

**IV.     The larger ownership dispute does not affect this Court's granting of Plaintiff's requested disbursements, nor is the reasonableness of the requested disbursements at issue before this Court.**

Understanding this Court retains jurisdiction over this matter to the extent set forth in the stipulation and Dismissal Order, this Court exercises its authority and discretion and grants Plaintiff's Motion.  Plaintiff commenced this action to sell its sole asset—the Florida Property—to pay its debts and avoid foreclosure, and the requested disbursements go to the core purpose of the action brought before this Court.  Plaintiff does not seek general or open-ended distribution of funds.  Rather, it asks the Court to exercise its jurisdiction to adjudicate the distribution of the Net Sale Proceeds to cover specific transaction-related costs incurred in connection with the sale of the Florida Property.  This is the precise issue over which this Court retained jurisdiction.

Despite emphasizing the importance of limiting this Court's analysis to the four corners of the Settlement Agreement, neither the Defendant nor the R&R explain how the Settlement Agreement (on their reading of it) *privileges another court of competent jurisdiction* to adjudicate the distribution of funds over this Court's own retained jurisdiction to do so.  [*See generally* ECF No. 54; R&R; Resp.].  Looking only at the Settlement Agreement, the parties did not indicate any reason for this Court to withhold exercising its jurisdiction in deference to another court's jurisdiction.  Defendant points to the broader dispute, which "has resulted in at least four court proceedings" in various jurisdictions.  [Resp. at 1].  Defendant continues that, "[c]ritically, the core issue in every case other than this one is the ownership of Belijar," and arguing that granting this Motion requires this Court to decide the issue of Belijar's ownership.  [*Id.* at 2].  That argument, however, is not correct.  This Court does not decide "the ownership of Belijar"—in this Order or otherwise.  Defendant does not explain why the disbursements of fees and costs stemming from this very lawsuit must be determined in a different lawsuit regarding the ownership of Belijar, which was not at issue here.

In this Order, the Court does not reach—and is not required to resolve—any dispute regarding the ultimate ownership or control of Belijar or any underlying merits of related litigation elsewhere. These questions are being decided in Peru and the Turks and Caicos. [*See* H'g Tr. at 18:11–14]. Any steps the Court takes here can be considered in those other lawsuits. Should the Defendant ultimately prevail in another jurisdiction on the issue of Belijar's ownership, the record and actions taken here may be considered for any such purposes or accounting. This Order only serves to enforce the Settlement Agreement in this case by adjudicating and directing the distribution of the Net Sale Proceeds from the sale of the Florida Property.

Finally, this Court agrees with Judge Louis that Defendant lacks standing to contest the reasonableness of Plaintiff's requested disbursements. [*See* H'g Tr. at 9:15–23, 10:10–20]. Plaintiff's agreements with the service providers were made on behalf of Belijar, and Defendant was neither a party to, nor a third-party beneficiary of these agreements. Accordingly, Defendant has no basis to challenge the reasonableness of fees arising from contracts to which he is a stranger. If Defendant is later determined to be the rightful owner of Belijar, he may then contest these disbursements in a future proceeding. Until such a determination is made, Defendant's cursory argument on the reasonableness of the fees is rejected. In the alternative, Defendant Sandelman preserved *only* the ability to contest this Court's *jurisdiction* regarding the requested distribution, and nothing more. [Settlement Agreement ¶ 3].

## CONCLUSION

The Court concludes, on a *de novo* review of the R&R, that this Court may adjudicate the distribution of the Net Sale Proceeds from the sale of the Florida Property, as requested by Plaintiff in its Motion to Disburse. The Court finds that, pursuant to its continuing jurisdiction and the parties' agreement, it is authorized to and hereby does grant the relief sought as to the release of the Net Sale Proceeds held in trust. To the extent any party contends they are entitled to repayment or

indemnification, such issues lie beyond the scope of this limited proceeding and may be pursued, if appropriate, in a separate action or forum.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Magistrate Judge Louis's R&R [**ECF No. 63**] is **SET ASIDE**.

2. Plaintiff's Motion to Pay for Plaintiff's Attorney's Fees and Other Costs from the Net Sales Proceeds Held in Escrow [**ECF No. 50**] is **GRANTED,** and Plaintiff's Motion to Set Aside the R&R [**ECF No. 66**] is **GRANTED**. The net proceeds from the sale of the Florida Property shall be distributed in the following manner:

    a. $438,927.21 to H&K for unpaid legal fees and costs;

    b. $10,900.00 to Michael Blanco CPA PA, Inc., for accounting and tax services;

    c. $215.50 to Alex D. Siulkik, P.A., for unpaid closing costs of the Florida Property;[4] and

    d. $5,371.75 to Belijar's directors for expenses related to the sale of the Florida Property.

3. The **Clerk of Court** is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on July 18, 2025.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record

---

[4] This disbursement appears to be authorized explicitly by Paragraph 2(f)(iii) of the Settlement Agreement. Regardless, for the reasons stated above, this specific request for disbursement of Net Sale Proceeds falls within Paragraph 3 of the Settlement Agreement.